9356

## GAINES v. CHARLESTON LIGHT & WATER CO.

### (88 S. E. 378.)

WATERS AND WATERCOURSES — PUBLIC WATER SUPPLY — CUTTING OFF WATER—FAILURE TO PAY CHARGE.—Where tenants, occupying two houses of a common landlord, drew water from a service pipe which bifurcated and supplied both tenants, to the knowledge of the water company, the tenant became joint debtors to the company for all the water drawn, each using unknown quantities, there being no meter, and the remedy of the company for nonpayment of its charge was only to sue both tenants or cut off the water upon the refusal of both to pay, and its cutting off the water upon the refusal of one alone to pay the whole debt was tortious.

Before GARY, J., Charleston, November, 1914.    Affirmed.

Action by W. F. Gaines against the Charleston Light and Water Company. From an order of the Circuit Court reversing an order of nonsuit granted by the Civil and Criminal Court, defendant appeals.

*Messrs. Miller, Bissell & Miller,* for appellant, submit: *The exceptions on appeal to the Circuit Court were too general:* 95 S. C. 382; 94 S. C. 112; 91 S. C. 384; 90 S. C. 470; 86 S. C. 523; 82 S. C. 321; 81 S. C. 226; 79 S. C. 120; 78 S. C. 513; 77 S. C. 255; 38 S. C. 365; 42 S. C. 422; and submit: (1) *The pipes on private premises are the property of the owner of the premises and are, therefore, under his exclusive control:* 30 A. & E. Enc. of L. 439; 1 Wyman, Public Service Corporations, sec. 406; 13 Idaho 568; 92 Pac. 533; 24 L. R. A. (N. S.) 485; 29 Ky. L. Rep. 780; 96 S. W. 456. (2) *A water company has the right to make reasonable regulations governing its business of sup-*

FOOTNOTE.—As to right to cut off water from whole building because of one tenant's delinquency, see notes in 61 L. R. A. 33, and 39 L. R. A. (N. S.) 814. As to discontinuing service to compel payment of water bills, see notes in 31 L. R. A. (N. S.) 301-304, 40 L. R. A. (N. S.) 263-265, — A. & E. Ann. Cas. 1914a, 542.

*plying water to consumers and to cut off the water for non-compliance with those regulations:* 30 A. & E. Enc. Law 419; 40 Cyc. 794, 796 and 804; 81 S. C. 443. *The water company had a right to require that where two houses owned by one person had been placed on a single pipe, the bill for both of such houses should be paid by one person, as to act otherwise would require that the water company should place itself in a position where it might be compelled to furnish water to one tenant without compensation:* 1 Wyman, Public Service Corp. 380; 29 Ky. L. Rep. 780; 96 S. W. 456; 53 S. W. 993. *The cases of Poole* v. *Water Company, 81 S. C. 438, and Benson* v. *Water Company, 88 S. C. 352, are not in point, and are not applicable to the case at bar.*

*Messrs. Logan & Grace,* for respondent, cite: 81 S. C. 447; 88 S. C. 354; 61 S. C. 98; 58 N. E. 785; 29 L. R. A. 376.

March 26, 1916.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action in the Civil and Criminal Court of Charleston for actual and punitive damages for cutting off the water supply at 24 Pinckney street, in the city of Charleston. At the conclusion of plaintiff's testimony there was only one witness, and he the plaintiff. The Court granted a nonsuit. The Circuit Court by a mere formal order sustained the order of nonsuit as to punitive damages, but reversed the order of nonsuit as to actual damages, and remanded the cause for trial.

The history of the cause is this: The lot of land in question belongs to a lady named Mrs. Picket. On the land are two houses, one upon the street and designated as No. 24, and one off the street and behind No. 24, and designated as No. 26. The plaintiff was tenant of No. 24 from July,

1912, and other persons by inference occupied No. 26. Mr. Hyde collected the house rent from No. 24. It does not appear who occupied No. 26; but the inference from the testimony is that it was occupied and got water from the one service pipe. The lot and both houses belonged to Mrs. Picket. Her agent, Hyde, had, prior to October, 1912, paid the water rents to the company for both houses; and the inference is that he either apportioned the same betwixt the tenants, or that the landlord bore that expense. Hyde notified the plaintiff that after October, 1912, the plaintiff would have to pay the water rents. The plaintiff so testified on cross-examination. In November, 1912, the company presented to the plaintiff and demanded payment of a bill for the quarter ·ending December 31, 1912. The bill was for $6.50, and was expressed to be for water consumed in No. 24, and it was made out to Mrs. Picket. But the plaintiff testified the defendant's servant told him the bill included water for both houses, No. 24 and No. 26. The people who had occupied No. 24 before the plaintiff had paid $4.50 for that .house. The plaintiff was willing and offered to pay that, but no more. Thereupon the company cut off the water supply, and there out sprung this suit at law.

A further history of the case is this: From the water main in Pinckney street there ran into the Picket ·lot one service pipe, from which there were two mouths of exit, one into No. 24, and one into No. 26. So far as the testimony shows, there was no meter on the service pipe; and the inference from the testimony is the rate was a flat one. So far as the testimony shows, as before stated, there was by inference an occupant of No. 26; but as to any part he took in the transaction or if any demand for payment was made on him the testimony is silent. The answer recites a fuller history ·of the whole transaction than the plaintiff's testimony discloses, to .which reference will hereafter be made.

There are five exceptions, but they make but one prime and general issue, and that is: Was the plaintiff severally

liable to pay the bill of $6.50, which was water for both houses? . The water company has so conceived, and has so proceeded against him in order to exact payment. The complaint alleged that the plaintiff was a subscriber to the service of the company; and there was testimony tending to prove it; the answer denied that; and it also alleged that before October, 1912, the landlord had without defendant's knowledge or consent extended the service pipe to No. 26, and that so soon as defendant knew of the said extension (before October, 1912), the service to the two houses was entered on defendant's books as one service, and was so paid by the landlord until October, 1912, at which time the land-lord notified the defendant that the tenants would be respon-sible for water consumed; that thereafter, pursuant to the notice, the bill for the last quarter of 1912 was sent to the plaintiff as tenant of No. 24, and that plaintiff declined to pay it, because it included water furnished to No. 26; that thereupon the defendant cut the water off, etc.

The whole transaction, then, shows that there were two houses supplied with water by the company from one service pipe with two mouths of exit, and that the company knew it and assented to it. These two tenants were then both subscribers to the service, by implied contracts. There was no contract, express or implied, betwixt the company and the landlord. The testimony negatives the conclusion that there was such a contract, and shows the contrary to it.

Stripped of its appliances, the case is the same as if the company had not run a service pipe into the houses, but had stopped at the edge of the pavement and there erected a water spigot, and from it supplied the two householders for one common price the water they might draw off in buckets and tote to their houses. In such a case as that, if the company knew, as it did in the instant case, that, while there was only one exit for the water, two persons were using it, and if it knew, as it did in the instant case, that the landlord was not liable, then the relationship betwixt the two persons

would be that of joint contractors on the one side with the company on the other side.    It was admitted by defendant's counsel in the oral argument that there was an implied contract between the company and the tenant of No. 24, as evidenced by the practice of the parties.    By the same token there was an implied contract between the company and the tenant of No. 26.    And as the two tenants were drawing water at the same spout, and in the same way, and in unseverable, because unknown, quantities, and in unseverable, because unknown, times, they became the joint debtors to the company for all the water drawn.    If that be so, then the company's remedy for nonpayment of water rents would be either to sue the two tenants in one action or to close up the spigot upon the refusal of the two tenants to pay.    The liability of the tenants would not be several, and the company could not pursue one alone for the debt; for the debt was one.

The two cases from other jurisdictions cited by the appellant do not militate against this view.    In that from Kentucky the company had several patrons in one house, and the house was supplied by one service pipe.    Some of the patrons would not pay, and some did pay.    The whole supply was cut off, and those who paid were held to be without remedy.    *Cox* v. *City of Cynthiana,* 96 S. W. 456, 29 Ky. Law Rep. 780.    In that from Tennessee there was one patron in his own house.    By contract he had only one opening, but he insisted on having another unused opening in his yard.    The company cut off the whole, and he was held to be without remedy.    *Harbison* v. *Knoxville* (Tenn. Ch. App.), 53 S. W. 993.

In the case at bar the company cut off the whole supply because one of two patrons who took from the same exit did not upon demand pay for the whole amount taken.

Our judgment is the order of the Circuit Court must be affirmed; and it is so ordered.    The cause is remanded for trial.

As there was no issue before us about punitive damages, we have expressed no opinion thereabout.

MESSRS. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur in the opinion of the Court.

MR. JUSTICE FRASER, *concurring.* I concur in the result. When the plaintiff asks, "Can I be required to pay my own water rent and the water rent of another which I have not agreed to pay?" the answer is unquestionably, "No." When the defendant asks, "Can I be required to furnish water to two for the price of one?" the answer is still, "No."

There was one service pipe, and by custom the landlord had paid the water rent for both tenants, and by a private agreement between the landlord and tenant the tenants paid the landlord. The water company had the right to say to the landlord, "We will not supply your premises with water for less than $6.50," and, if the landlord did not pay it, to shut off the water. It seems that the company demanded the whole water rent from one tenant, who had no sort of a contractual relation with the other tenant. This it clearly had no right to do.

MR. JUSTICE HYDRICK dissents.